# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

KENNETH DILVERN ROGERS, SR.,   )
                                                 )
               Petitioner,   )
                              )
       v.                )     1:11CV757
                              )
HERBERT JACKSON,             )
                              )
               Respondent.   )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 8.) On April 25, 2008, in the Superior Court of Cabarrus County, Petitioner was convicted after a trial by jury of possession with intent to sell and deliver cocaine, intentionally maintaining a dwelling to keep controlled substances and habitual felon status in cases 06 CRS 51826, 51827 and 6841. (Docket Entry 10 at 44-47;[1] see also Docket Entry 8, ¶¶ 1, 2, 4-6.) The trial court sentenced Petitioner to two consecutive terms of 115 to 147 months in prison. (Docket Entry 10 at 44-47; see also Docket Entry 8, ¶ 3.)

Petitioner appealed his convictions to the North Carolina Court of Appeals (Docket Entry 14-26 at 42-43; see also Docket Entry 8, ¶ 8), which denied his appeal on August 4, 2009. State v. Rogers, No. COA08-1344, 2009 N.C. App. LEXIS 1284 (Aug. 4, 2009) (unpublished). On February 11, 2010, Petitioner filed a pro se

---

[1] Pin citations refer to the page number in the footer appended to the cited document by the CM/ECF system.

petition for discretionary review ("PDR") with the North Carolina Supreme Court, more than five months out of time. (Docket Entry 14-12; see also Docket Entry 8, ¶ 9(g).) On November 4, 2010, the North Carolina Supreme Court denied Petitioner's PDR (Docket Entry 10 at 18; see also Docket Entry 8, ¶ 9(g)(3)-(4)),[2] and Petitioner did not thereafter file a petition for a writ of certiorari with the United States Supreme Court (Docket Entry 8, ¶ 9(h)).

On September 17, 2010, Petitioner filed a pro se motion for appropriate relief ("MAR") with the state trial court. (Docket Entry 14-5; see also Docket Entry 8, ¶¶ 10, 11(a).) The trial court denied the MAR by order dated October 22, 2010. (Docket Entry 14-6; see also Docket Entry 8, ¶ 11(a)(7)-(8).) Petitioner then filed a pro se certiorari petition with the North Carolina Court of Appeals (Docket Entry 8, ¶ 11(b)), which he dated as submitted on November 16, 2010 (Docket Entry 14-8 at 17), and which that court received as filed on November 22, 2010 (id. at 2; see also Docket Entry 8, ¶ 11(b)(3)). The Court of Appeals denied Petitioner's certiorari petition on December 9, 2010. (Docket Entry 14-9; see also Docket Entry 8, ¶ 11(b)(7), (8).)

On January 21, 2011, Petitioner submitted a petition for writ of habeas corpus to the Moore County Superior Court (Docket Entry 14-10; see also Docket Entry 8 at 5), which that court transferred to the Cabarrus County Superior Court where Petitioner's

---

[2] Petitioner also apparently filed a petition for writ of certiorari with the North Carolina Supreme Court on August 5, 2010. (Docket Entries 14-13, 14-14 and 14-15.) The Supreme Court similarly denied that petition on November 4, 2010. (Docket Entry 10 at 19.)

-2-

convictions arose. (Docket Entry 10 at 24 (reflecting transfer)). The Cabarrus County Superior Court denied Petitioner's habeas corpus petition on May 2, 2011. (Id. at 24-25.)[3] In addition, Petitioner filed a second MAR with the Cabarrus County Superior Court on March 21, 2011 (Docket Entry 14-19; see also Docket Entry 8 at 5-6), which that court denied on March 22, 2011 (Docket Entry 10 at 21-22).[4]

Petitioner then filed a certiorari petition with the North Carolina Court of Appeals on June 13, 2011. (Docket Entry 8 at 6-7; see also Docket Entry 10 at 28 (indicating date filed).)[5] The Court of Appeals denied the petition on July 1, 2011. (Id.)

Petitioner thereafter submitted his Petition in this Court (Docket Entry 8), which he dated as mailed on October 28, 2011 (id. at 14), and which the Court received as filed on November 1, 2011 (id. at 1). Respondent moved for summary judgment on both statute of limitations grounds and the merits (Docket Entry 13) and Petitioner responded in opposition (Docket Entry 16).

---

[3] Petitioner filed an amended habeas corpus petition with the Moore County Superior Court on May 4, 2011 (see Docket Entry 8 at 5 (indicating date filed)), which that court transferred to the Cabarrus County Superior Court (see Docket Entry 10 at 26 (indicating transfer)). The Cabarrus County Superior Court denied the amended petition on May 17, 2011. (Id. at 26-27.)

[4] Petitioner filed an amendment to his second MAR on March 25, 2011 (see Docket Entry 8 at 5-6 (indicating date filed)), which the trial court denied on April 7, 2011 (Docket Entry 10 at 23).

[5] The materials submitted to the Court in this matter do not contain a copy of Petitioner's June 13, 2011 certiorari petition.

-3-

## Petitioner's Claims

Petitioner raises three claims for relief in his Petition: (1) the state trial court violated his federal due process rights by finding his second MAR procedurally barred; (2) double jeopardy attached when the trial court applied one habitual felon indictment to two underlying felonies, creating two habitual felon convictions and sentences; and (3) he received ineffective assistance of his trial counsel. (Docket Entry 8, ¶ 12.)

## Discussion

Respondent moves for summary judgment primarily on the grounds that the Petition was filed[6] outside of the one-year limitation period. 28 U.S.C. § 2244(d)(1). In order to assess Respondent's statute of limitation argument, the Court first must determine when Petitioner's one-year period to file his § 2254 Petition commenced. In this regard, the United States Court of Appeals for the Fourth Circuit has explained that:

---

[6] "In [Houston v. Lack, 487 U.S. 266 (1988)], the Supreme Court held that a *pro se* prisoner's notice of appeal is filed on the date that it is submitted to prison officials for forwarding to the district court, rather than on the date that it is received by the clerk." Morales-Rivera v. United States, 184 F.3d 109, 110 (1st Cir. 1999). At least eight circuits "have applied th[is] prisoner mailbox rule to [establish the 'filing' date of] motions under 28 U.S.C. § 2254 or § 2255." Id. at 110-11 & n.3. In two published opinions issued since that consensus emerged, however, the United States Court of Appeals for the Fourth Circuit has declined to decide whether the prison mailbox rule applies in this context. See Allen v. Mitchell, 276 F.3d 183, 184 n.1 (4th Cir. 2001) ("Allen's petition was dated March 9, 2000, and it should arguably be treated as having been filed on that date. Cf. United States v. Torres, 211 F.3d 836, 837 n.3 (4th Cir. 2000) (declining to decide whether prison mailbox rule applies to filing of federal collateral review applications in district court). We take no position on that question here."); but see Smith v. Woodard, 57 F. App'x 167, 167 n.* (4th Cir. 2003) (implying that Houston's rule governed filing date of § 2254 petition); Ostrander v. Angelone, 43 F. App'x 684, 684-85 (4th Cir. 2002) (same). Because the difference between the date Petitioner signed his Petition (i.e., the earliest date he could have given it to prison officials for mailing) and the date the Clerk received it would not affect disposition of the timeliness issue, the Court need not consider this matter further.

-4-

> Under § 2244(d)(1)(A)-(D), the one-year limitation period <u>begins to run from</u> the latest of several potential starting dates:
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

<u>Green v. Johnson</u>, 515 F.3d 290, 303-04 (4th Cir. 2008) (emphasis added).

The factual predicate of Petitioner's claim (1) concerns the state trial court's March 22, 2011 denial of his second MAR as procedurally barred. Thus, subparagraph (D) arguably applies and renders March 22, 2011, the limitations period commencement date for that claim; as a result, by submitting that claim with his Petition on October 28, 2011, Petitioner complied with the statute of limitations.[7]

---

[7] Notwithstanding the timeliness of claim (1), Petitioner has failed to exhaust his state court remedies with respect to this claim, as he could not have raised the claim on direct appeal and has not raised it via MAR in the state courts. See Robinson v. Lewis, No. 5:12-HC-2021-F, 2013 WL 1182658, at *6 (E.D.N.C. Mar.21, 2013) (unpublished) (holding state remedies exhausted by either pursuing a direct appeal through the North Carolina Supreme Court or by filing a MAR in the state trial court and appealing its denial to the North Carolina Court of Appeals); Simpson v. Branker, No. 3:11-cv-348-RJC, 2012 WL 4321294, at
(continued...)

-5-

Turning to the merits of claim (1), Petitioner contends that the state trial court violated his due process rights by denying his second MAR as procedurally barred. (Docket Entry 8 at 8.) Petitioner's contention fails, because "[c]laims of error occurring in a state post conviction proceeding cannot serve as a basis of federal habeas corpus relief." Bryant v. Maryland, 848 F.2d 492, 493 (4th Cir. 1988); accord Lawrence v. Branker, 517 F.3d 700, 717 (4th Cir. 2008); Wright v. Angelone, 151 F.3d 151, 159 (4th Cir. 1998). In sum, claim (1) lacks merit and should be denied.

The record does not reveal any basis for concluding that subparagraphs (B), (C), or (D) of § 2244(d)(1) apply to claims (2) and (3) of the Petition. As a result, Petitioner's one-year limitation period with respect to those claims commenced on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review," 28 U.S.C. § 2244(d)(1)(A). The Court thus must ascertain when direct review (or the time for seeking direct review) of Petitioner's underlying conviction ended.

Respondent argues that Petitioner's convictions became final on September 8, 2009, 35 days after the North Carolina Court of Appeals' decision denying his direct appeal (see Docket Entry 14 at 3-8), citing N.C. R. App. P. 32(b) (providing that, unless court orders otherwise, mandate issues 20 days after written opinion filed) and N.C. R. App. P. 14(a) & 15(b) (allowing 15 days after

---

[7](...continued)
*3 (W.D.N.C. Sept.20, 2012) (unpublished) (same). Nevertheless, the Court may deny this unexhausted claim on the merits. 28 U.S.C. § 2254(b)(2).

-6-

issuance of mandate to file notice of appeal or PDR). Respondent further maintains that the untimely PDR and certiorari petition Petitioner filed in the North Carolina Supreme Court did not revive his direct appeal, citing primarily Saguilar v. Harkleroad, 348 F. Supp. 2d 595, 598-600 (M.D.N.C. 2004) (Osteen, Sr., J. adopting recommendation of Eliason, M.J.).[8]  This argument has merit.

In Saguilar, the North Carolina Court of Appeals affirmed the petitioner's convictions on direct review on August 1, 2000. Id. at 597.  The petitioner did not file a PDR with the North Carolina Supreme Court within the allowed 35 days, but instead waited over one year and filed a certiorari petition in that court, which that court denied on January 31, 2002. Id.  The petitioner argued that his convictions did not become final and, thus, the limitations period did not begin to run, until the North Carolina Supreme Court had the opportunity to review his case. Id. at 598.  The Court disagreed, beginning its analysis with the language of the North Carolina Rules of Appellate Procedure. Id.  The Court reasoned that, because the certiorari petition was untimely under Rules 14 and 15, it fell instead under the authority of Rule 21(a)(2), which "allows a party to file a petition for certiorari seeking review of the Court of Appeals' decision when the party has lost his 'right to prosecute an appeal of right or to petition for discretionary review by failure to take timely action.'" Id. at 598.  This language, along with the fact that Rule 21 appears in a section of

---

[8] Petitioner has not disputed this argument.  (See Docket Entry 16.)

the Rules entitled "Extraordinary Writs," convinced the Court that Rule 21(a) certiorari petitions represent "something apart from the normal direct review process." Id. at 599. The Court concluded that the petitioner's convictions became final 35 days after the Court of Appeals denied his direct appeal, notwithstanding the later filed petition. Id. at 601.

The Court further explained its reasoning as follows:

> If petitions for certiorari were to be construed as part of the direct review process for purposes of determining [the Antiterrorism and Effective Death Penalty Act ("AEDPA")] finality, prisoners who were not diligent, who never pursued a timely appeal . . . could at any time undermine the finality of their conviction, years after any possible right to an appeal had expired, simply by filing a petition for certiorari. . . . Moreover, being in the nature of an extraordinary writ, there appears to be no limit on the filing of successive petitions for certiorari. The consequence would be that persons, such as petitioner, who have already filed a petition for certiorari, would not have a truly final conviction because they could always file another petition seeking another round of review. . . . This would be an unreasonable interpretation of North Carolina law and AEDPA because it would counter the interest in having convictions become final in a certain and timely manner.

Id. at 599-600.

The undersigned United States Magistrate Judge finds Saguilar's analysis persuasive. Further, although the instant case differs from Saguilar in that Petitioner filed both a certiorari petition and an untimely PDR in the North Carolina Supreme Court, Saguilar's reasoning equally applies to an untimely PDR. Because Petitioner's PDR was untimely under Rules 14 and 15, it also fell under the authority of Rule 21 as an extraordinary writ outside the standard direct review process. See Arrington v. Stancil, No.

-8-

5:11-HC-2018-BO, 2012 WL 125755, at *2 & n.1 (E.D.N.C. Jan. 17, 2012) (unpublished) (following Saguilar and holding that untimely PDR constituted a Rule 21 extraordinary writ that did not "resurrect [the petitioner's] direct appeal"), appeal dismissed, No. 12-6290, 2012 WL 2354469 (4th Cir. June 21, 2012) (unpublished). Moreover, the concerns expressed in Saguilar about a prisoner's ability to perpetually delay the finality of his conviction by filing serial certiorari petitions apply with no less force to a prisoner who could accomplish the same result by filing serial, untimely PDRs.

Moreover, as Petitioner's untimely PDR did not fall in the direct review process, the Court should not include in its calculation of the finality date the 90 days allowed under Supreme Court Rule 13.1 to file a petition for a writ of certiorari with the United States Supreme Court. See Gonzales v. Thaler,___ U.S. ___, ___, 132 S. Ct. 641, 653-54 (2012) (where petitioner does not seek review in state's highest court, judgment becomes final when time for seeking such review expires and does not include 90 days to seek certiorari in United States Supreme Court).

In sum, Petitioner's convictions became final on September 8, 2009, 35 days after the Court of Appeals denied his direct appeal. The limitations period then ran for 365 days until it expired a year later on September 8, 2010, over one year before Petitioner brought this action under § 2254.[9]

---

[9] Nor would Petitioner's untimely PDR or certiorari petition toll the limitations period under 28 U.S.C. § 2244(d)(2). Neither filing represents a
(continued...)

Petitioner did make multiple state collateral filings, which generally toll the federal habeas deadline for "the entire period of state post-conviction proceedings, from initial filing to final disposition by the highest court (whether decision on the merits, denial of certiorari, or expiration of the period of time to seek further appellate review)," Taylor v. Lee, 186 F.3d 557, 561 (4th Cir. 1999). Petitioner, however, did not make any collateral filings in the state courts until September 17, 2010,[10] nine days

---

[9](...continued)
"properly filed application for State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2). The post-conviction process in North Carolina typically starts with the filing of a MAR in the state trial court, see generally N.C. Gen. Stat. §§ 15A-1411 - 15A-1422, followed by a certiorari petition in the North Carolina Court of Appeals seeking review of any denial of the MAR, see N.C. Gen. Stat. § 15A-1422(c)(3). North Carolina law does not provide for the North Carolina Supreme Court to review the denial of a non-capital MAR. See N.C. Gen. Stat. § 15A-1422(f). Here, as Petitioner's certiorari petition and PDR pre-dated all of Petitioner's MARs and were filed in the North Carolina Supreme Court, they do not constitute "properly filed" applications for post-conviction review. See Saguilar, 348 F. Supp. 2d at 598 & n.2, 600-01 (holding that certiorari petition in North Carolina Supreme Court did not represent part of the regular review process for post-conviction matters and did not toll the limitations period); accord Headen v. Beck, 367 F. Supp. 2d 929, 932 (M.D.N.C. 2005) (holding that "later petitions for certiorari" in the North Carolina Supreme Court were "neither part of the direct review process nor the ordinary post-conviction review process which tolls the running of the [limitations period].")

[10] Petitioner's MAR was not "properly filed" on September 3, 2010, the date on which he claims to have signed and submitted it. (See Docket Entry 14-5 at 29.) North Carolina law requires that motions for appropriate relief "be filed in the manner provided in G.S. § 15A-951(c)." N.C. Gen. Stat. § 15A-1420(a)(3). Under said subsection, "[a]ll written motions must be filed with the court" accompanied by an appropriate certificate of service. N.C. Gen. Stat. § 15A-951(c). Said subsection does not deem motions for appropriate relief as filed at the time of mailing. Id. Further, the order denying Petitioner's MAR specifically stated that the motion was "filed" on September 17, 2010. (Docket Entry 14-6.) That declaration is consistent with case law indicating that North Carolina does not apply a mailbox rule for prisoner filings. See Bryson v. Harkleroad, No. 1:10CV36-3-MU, 2010 WL 1328313, at *3-4 (W.D.N.C. April 1, 2010) (citing North Carolina v. Kittrell, No. COA08-988, 197 N.C. App. 403 (table), 677 S.E.2d 14 (table), 2009 WL 1522698, at *3-4 (June 9, 2009) (unpublished)), appeal dismissed, 405 F. App'x 773 (4th Cir. 2010). Where states do not apply a mailbox rule to filings in their courts, at least three federal circuits have held that federal courts should not apply a mailbox rule to state court filings in making calculations under § 2244(d). See Howland v. Quarterman, 507 F.3d 840, 845 (5th Cir. 2007); Garcia v. Shanks, 351 F.3d 468, 471-72 (10th Cir. 2003); Vroman v.
(continued...)

-10-

after his time to file a federal habeas claim had already expired. State filings made after the federal limitations period has passed do not restart or revive the filing period. See Minter v. Beck, 230 F.3d 663, 665 (4th Cir. 2000).

Petitioner does not dispute the foregoing time-line, but he does advance several reasons why he believes the Court should consider the Petition despite its untimeliness. (Docket Entry 16 at 1-6.) In other words, Petitioner requests equitable tolling, which doctrine the Supreme Court has ruled applicable in this context, Holland v. Florida, 560 U.S. ___, ____, 130 S. Ct. 2549, 2562 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)) (emphasis added).

---

[10](...continued)
Brigano, 346 F.3d 598, 603-04 (6th Cir. 2003); but see Fernandez v. Artuz, 402 F.3d 111, 116 (2d Cir. 2005). Like other courts, see, e.g., Bryson, 2010 WL 1328313, at *3-4; Vasquez v. Kingston, 422 F. Supp. 2d 1006, 1008-10 (E.D. Wis. 2006), the undersigned Magistrate Judge finds the majority approach more persuasive. In particular, the view that state rules control in this context has "heightened cogency in light of the United States Supreme Court's statement that when applying § 2244(d)(2), 'an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.'" Vasquez, 422 F. Supp. 2d at 1009 (quoting Artuz, 531 U.S. at 8). In this case, the Petition was ultimately out-of-time in any event. Even with the benefit of a "mailbox rule" for state filings, Petitioner would have had only five days remaining on his time to file a federal habeas petition (i.e., the difference between September 3, 2010, when he allegedly mailed his MAR, and September 8, 2010, when his one-year limitation period expired). The North Carolina Court of Appeals denied Petitioner's certiorari petition seeking review of the denial of his MAR on December 9, 2010. (See Docket Entry 14-9.) His time to file would have begun to run again on that day and would have expired five days later on December 14, 2010. Petitioner did not file his next petition, the state habeas petition filed in the Moore County Superior Court, until January 21, 2011. (See Docket Entry 14-10.)

First, Petitioner contends that "the Constitution guarantees prisoners the right of meaningful access to the courts," citing Bounds v. Smith, 430 U.S. 817, 824, 828 (1977), overruled on other grounds by Lewis v. Casey, 518 U.S. 343, 354 (1996). (Docket Entry 16 at 7-8.) Petitioner further asserts that "[t]he courts recognize that prisoners face practical difficulties in exercising their right of legal access and may relax procedural hurdles in some circumstances to allow prisoners to file and prosecute claims." Id. at 8. If Petitioner implies that he suffered a denial of "meaningful access to the courts" in violation of Bounds, that argument lacks merit. Bounds held that, in order to provide inmates with meaningful access to the courts, a State has an obligation to provide either prison law libraries or assistance from persons trained in the law. North Carolina complies with Bounds by providing inmates in this State, including Petitioner, with access to North Carolina Prisoner Legal Services, Inc. See Coil v. Peterkin, No. 1:08CV145, 2009 WL 3247848, at *10 (M.D.N.C. Oct. 5, 2009) (unpublished).

To the extent Petitioner argues that the Court should excuse him from complying with the one-year statute of limitations because he lacked familiarity with post-conviction remedies, that argument similarly fails. Unfamiliarity with the legal process, even in the case of an unrepresented prisoner, does not constitute grounds for equitable tolling. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004); March v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2001); Turner v. Johnson, 177 F.3d 390, 392 (5th Cir. 1999); see

-12-

also Gray v. Lewis, No. 1:11CV91, 2011 WL 4022787, at *3 (M.D.N.C. Sept. 9, 2011) (unpublished) (citing Hood v. Jackson, No. 5:10-HC2008-FL, 2010 WL 4974550, at *2 (E.D.N.C. Dec. 1, 2010) (unpublished), and Dockery v. Beck, No. 1:02CV00070, 2002 WL 32813704, at *2 (M.D.N.C. Aug. 1, 2002) (Beaty, J., adopting recommendation of Eliason, M.J.) (unpublished)), adopted, slip op. (M.D.N.C. Nov. 4, 2011) (Beaty, C.J.)).

Second, Petitioner "contends actual innocence" (Docket Entry 16 at 5), which, liberally construing Petitioner's pro se pleadings under Haines v. Kerner, 404 U.S. 519, 520-21 (1972), the Court should treat as an argument that his "actual innocence" excuses his late filing. Neither the United States Supreme Court nor the Fourth Circuit has recognized an actual innocence exception to the one-year limitations period.[11] Other federal courts of appeals have divided over this issue. Compare Souter v. Jones, 395 F.3d 577, 597-601 (6th Cir. 2005) (allowing equitable tolling of statute of limitation based on showing of actual innocence under Schlup v. Delo, 513 U.S. 298 (1995)), with Escamilla v. Jungwirth, 426 F.3d 868, 871-72 (7th Cir. 2005) (ruling that actual innocence has no bearing on time-bar).

---

[11] On October 29, 2012, the Supreme Court granted certiorari in McQuiggin v. Perkins, No. 12-126, 133 S. Ct. 527, to address the existence of an actual-innocence exception to Holland's requirements for equitable tolling that a petitioner (1) show an "extraordinary circumstance" that "prevented timely filing" of a habeas petition; and (2) demonstrate that "he has been pursuing his rights diligently." Holland, 560 U.S. at ___, 130 S. Ct. at 2562 (quoting Pace, 544 U.S. at 418). The Supreme Court heard oral arguments in the case on February 25, 2013.

-13-

However, even if Petitioner's invocation of the phrase "actual innocence" (see Docket Entry 16 at 5) could have some bearing on the time-bar issue, he has failed to make the requisite showing. To demonstrate actual innocence, a petitioner must identify "new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup, 513 U.S. at 324. That evidence must demonstrate the "'conviction of one who is actually innocent.'" Id. at 327 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). Thus, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. Moreover, a petitioner must show factual innocence and not merely legal insufficiency. Bousley v. United States, 523 U.S. 614, 623 (1998).

Here, Petitioner has offered no new evidence of his innocence at all. In his response in opposition to the Respondent's instant Motion for Summary Judgment, Petitioner takes issue with the sufficiency of the evidence introduced at his trial and the effectiveness of his trial counsel (see Docket Entry 16), but he points to no new evidence, of which he lacked knowledge at the time of his trial,[12] that would demonstrate the "conviction of one who is actually innocent," Schlup, 513 U.S. at 327. Petitioner thus

---

[12] Petitioner alleges that his son, who was present in Petitioner's home at the time of execution of the search warrant and arrest, is actually the "guilty person" in his case and implies that his trial counsel should have subpoenaed his son to testify to Petitioner's innocence at trial. (Docket Entry 16 at 3-4.) However, Petitioner was clearly aware at the time of his convictions that neither the State nor his trial counsel had subpoenaed his son to testify.

has not satisfied the standard for asserting actual innocence, assuming that such an assertion could provide a basis for equitable tolling.

Finally, Petitioner contends that he "was diligent in his efforts" to pursue post-conviction remedies. (Docket Entry 16 at 2.) Although Petitioner made multiple collateral filings in the state courts beginning in September 2010, he fails to provide the Court with any explanation as to why he could not, with the exercise of due diligence, have made proper, timely filings in the state courts and this Court. "'[E]quity is not intended for those who sleep on their rights.'" Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990).

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 13) be **GRANTED**, that the Petition (Docket Entry 8) be **DISMISSED**, and that this action be **DISMISSED**.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

May 16, 2013